Parker, J., concurred.
Sedgwick, J., and Thatcher, J.,
were not present at the argument or decision of the action.
Sexvall, J.
The difference of opinion, in deciding the question submitted to the opinion of the Court in the case at bar, is to be regretted, particularly on my part; but I have found it unavoidable, after a full consideration of the provisions of the constitution and the statutes of the United States, which, in the apprehension of a majority of the Court now present, and who alone were present at the argument, are to govern the decision. My dissent from my brethren may perhaps be attributed to a preconceived opinion, formed on the same general question, in the case of Bartlett vs. Knight, (1) decided in this Court in the year 1805. But on that occasion, the Court were unanimous, and the decision may be allowed to have, with me at least, some authority. I must on this occasion also notice the case of Hitchcock & Al. vs. Aicken, (2) which had been previously decided in the Supreme Court of the state of * New York, in a manner which fully warranted the decision in Bartlett vs. Knight. I have not, however, been satisfied to rest my present opinion on these authorities, and have preferred to examine the question with the diffidence of my former opinion, which the authorities now opposed to me are calculated to excite.
It would seem, from the course of the argument, that the motion for a new trial, in the case at bar, depends upon the general question, whether a judgment recovered in the Superior Court of the state of New Hampshire (the record thereof, and the proceedings on which it was founded, having been authenticated according to the provisions of the statute of the United States) is to be regarded in the light of a domestic judgment, rendered in the Supreme Court of this state, and is to have the effect of incontrovertible evidence of a debt or promise, in an action commenced in a court of record within this state, to enforce payment.
On this question, however, there is but one opinion ; and it is this, as I understand it, — that a judgment certified from New Hampshire has not the effect of a domestic judgment, and is not, as this *414 would be, incontrovertible evidence of a debt or promise. I can in no other way account for the issues taken to the country on the pleas of nil debet and not guilty, or for the requisition of a fact inserted in the report as proved at the trial, and now deemed essential to the decision, although not appearing in the proceedings certified, viz., that the writ in the original suit had been served upon the persons of the present defendant and his companion in the supposed trespass, upon which the judgment was founded. If an issue to the country is admissible, and facts extraneous to the record are to be proved, in an action of this nature, and otherwise maintained by the evidence' of authenticated copies, then the proceedings and judgment are not in all respects conclusive, but are examinable to some purposes and to * some extent. A judgment recovered in New Hampshire, however authenticated, has not the legal operation of a judgment recovered in Massachusetts. What will be its operation and legal effect remains to be considered.
By a clause in the federal constitution, full faith and credit are to be given, in each state, to the public acts, records, and judicial proceedings, of every other state; and Congress are authorized to prescribe, by general laws, the manner in which such acts, records, and proceedings, shall be proved, and the effect thereof. The manner of authenticating has been prescribed; and records and judicial proceedings, so authenticated, are to have such faith and credit given to them in every court of the United States, as they . have, by law or usage, in the courts of the state from whence the said records are or shall be taken.
Does faith and credit, whether full, or determined by the laws and usages of the state from whence the record of a judgment is authenticated, import legal effect and operation ? This import, although professedly stated, I believe, to be the true construction, was practically denied in all the cases which occurred, where the same words, used in the articles of confederation, were brought into question.
In the case of Kibbe vs. Kibbe, (3) in the Superior Court of the state of Connecticut, an action of debt upon a judgment certified from the Supreme Court of the state of Massachusetts, was refused to be sustained, upon the ground that the supposed judgment debtor had not been personally served with process to compel his appearance in the original cause; and that, therefore, the court, where the judgment was recovered, had proceeded without any jurisdiction of the cause.
*415 So, afterwards, in the case of Phelps vs. Holker, (4) in the Supreme Court of Pennsylvania, a judgment, obtained also in Massathusetts, was refused any credit; and, to justify the refusal, it was supposed that the judgment had been recovered in a process of foreign attachment which, it was * said, was a process in rem, not charging the person of the party summoned.†
Now, if full faith and credit mean any thing, one would suppose the judgments certified from Massachusetts to have been entitled to credit for the jurisdiction of the court in which they were rendered; that is, that their authority had been d"'v exercised, according to the laws and usages of Massachusetts, ot which the judgments themselves were sufficient evidence ; and especially that a judgment against the person had not been rendered on a process restricted in its operation to the article returned as attached, and there understood to be altogether a process in rem.. These decisions are, therefore, to be regarded as violent expedients, to which recourse was had to avoid a construction at which courts of justice naturally revolt, as soon as the consequences in particular cases are perceived.
* In the case of Armstrong vs. Executors of Carson, (5) before Judge Wilson, in the Circuit Court of the United States for the district of Pennsylvania, after the federal constitution and the act of Congress, to prescribe the mode in which the public acts, records, and judicial proceedings, in each state, shall be authenticated, so as to take effect in every other state,” the effect of authenticated records and judgments was considered as settled. Judge Wilson determined that an authenticated judgment was to have the same effect in the court to which it was certified, as in the *416 court from which it was taken. But, then, he concluded that a plea of nil debet to an action of debt on a judgment recovered in the state of New Jersey, as such a plea would not be sustained in the courts of New Jersey, was inadmissible in any court sitting in Pennsylvania. And we must allow that his conclusion was consistent with his premises, and the only just inference that could be established by them.
If the rules and doctrines of the common law, on this subject, have been abrogated by the federal constitution and the act of Congress, so far as the several states and the nation of the United States are concerned, — if the several states are no longer foreign to each other, in the jurisdictions of their legislative assemblies and judicial courts, — then, indeed, what is decreed in one state, whether legislatively or by the interpretation of the law in a civil action, is authoritative, in every other state, to be implicitly obeyed and carried into execution : and it is only upon this ground that judgments rendered in one state are to be received as conclusive evidence of a debt or promise, when, to enforce payment, actions are brought upon them in the judicial courts of another state. To inquire of the jurisdiction of a supreme or superior court, from which a judgment is certified, is to refuse full faith and credit; and judgments are certainly deprived, in the outset of the inquiry, of the effect to which they would be entitled, in the state from whence they are taken. .
*In the decision of the case of Hitchcock & Al. vs. Aicken, already mentioned, in the Supreme Court of the state of New York, the better opinion — that of three justices against two — was, that the rules and doctrines of the common law remain unaltered in their application in this particular; and that the states of the confederacy of the United States remain, as before their union, for certain purposes foreign to each other in the exercise of all legislative and judicial authorities; in short, that, by the full faith and credit provided for in the clause cited from the federal constitution, and in the statute enacted pursuant thereto, is not intended legal operation and effect, but the effect of evidence, to be received as competent' under the formalities prescribed. Judge IAvingston, one of the justices who dissented, in the report of his argument is made to cite the decisions in Connecticut and Pennsylvania with approbation, and to resolve them into the necessary discretion required in cases which lex non exacte definit, sed, arbitrio ■boni viri permittit. And it is obvious that the construction contended for, of the provisions of national law on this subject, leads inevitably to the exercise of a discretion which is guided by no rule, one consequence of which must be, that authenticated judg *417 ments are to be received either as conclusive evidence, or to be rejected as no evidence at all, by a discretion which is to be employed in each particular case.
For my part, I am desirous of adhering to the rules of the common law, for I cannot admit the construction that authenticated judgments, taken from one state, are, in every other state, conclusive evidence of a consideration from which a debt or promise is to be implied, against the supposed debtor, subjecting him to an action, or rather to an execution, in another jurisdiction than that where the judgment was pronounced. • And on the other hand, I cannot rest in a more limited construction of the provisions of national law on this subject, understood as abolishing the rules of the common law, and introducing a vague discretion to be exercised in a great number of judicatories, so * far independent, of each other as to have no common controlling jurisdiction even in cases of the last resort.
It is not easy to perceive why, in the examination of an authen ticated judgment, by the court to which resort is had for process to enforce payment, the only inquiry to be permitted is of the jurisdiction which the court rendering the judgment-had of the parties. Why not extend it to their jurisdiction of the subject-matter of the action in which the judgment had been recovered ? For it may happen that a party may be concluded, because personally liable to the process of a court which had no jurisdiction of the subject-matter of the action, or where it had been accidentally taken,— if I may use the expression,-—in consequence of the transitory nature of the demand, and by finding the party liable to be transiently within the bounds of their territory. It is at least sapposable that, in such a case, where the laws of another jurisdiction are to be administered, not within the judicial cognizance of the court, an erroneous judgment may have been rendered upon facts alleged or proved, and this may be apparent from the proceedings certified. The case would be stronger, if such a judgment should be brought, to be enforced in the state where was the proper jurisdiction of the subject-matter of the original action, and whose laws had been thus erroneously administered in another jurisdiction.
Other suggestions might be made, of cases arising under laws esteemed to have been enacted against public faith, or contra bonos mores; or judgments recovered against positive regulations within the state to which they are brought to be enforced. Such, for instance, would be judgments upon usurious or gaming contracts, illegal and void where made, but which may happen to be recovered where no such restraints are recognized.
*418 But I need not enlarge upon these possible examples, having said sufficient to show that judgments, rendered in other states than that to which they are brought to be enforced, may be reasonably opened to other inquiries than* that of the jurisdiction which the courts rendering the judgments might have had of the persons of the parties charged thereby. What is proposed in this respect is not, strictly speaking, an inquiry of the jurisdiction, which must be understood to be proved, if any thing is conclusively proved, by the judgment of a Supreme Court; but it is an inquiry of the manner in which a particular jurisdiction is exercised, according to its own regulations and the laws of the state from whence an authenticated judgment is taken, in order to determine whether a judgment there rendered is entitled to the effect supposed to be secured in all cases by laws pursuant to the federal constitution. Regarded as foreign judgments in point of jurisdiction and legal operation and effect, all these inqui ries, legal in themselves, and essential to every independent administration of justice, are open by the rules and maxims of the common law. These are known in their application and extent. Foreign judgments are not conclusive evidence of a debt, but prima facie evidence, and conclusive, if not justly impeached as irregularly or unduly obtained. (6)
I think the proceedings and judgment, relied on as conclusive evidence in the case at bar, are open to be examined, and that it is competent for the supposed judgment debtor to impeach, if he can, the judgment now to be enforced against him by the process of this Court. The record certified presents a case in which an inquiry, with us, seems to be peculiarly suitable and necessary. The defendant, incidentally visiting in New Hampshire, or occasionally passing within the bounds of that state, became, with his codefendant, since deceased, there liable, or was there charged in an action of trespass. In taking cognizance of the action, the Superior Court of New Hampshire undertook and assumed to administer our laws ; for the defendants were charged, in the original action, as trespassers, in taking certain goods within this state. They admitted the taking, which they justified as done under certain legal process, and by officers of the law, recognized * within this state. The averments of this plea were confessed by a general demurrer. To enforce the judgment rendered upon these pleadings against the defendant, is to administer our own laws by the intervention of a court in New Hampshire, who have no judicial cognizance of our laws or officers.
*419 Where presented as matters of fact, the interpretation of our raws is to be deemed conclusive, and to preclude an examination, where the laws and the subject of thé original action are matters of judicial cognizance. If the judgment in New Hampshire was right, our examination would have no tendency to defeat it; and if wrong, I cannot discover the source of that control or duty, which obliges us to enforce it against our citizen, entitled by his domicile to our protection, and who certainly has not promised to pay, or has not become justly indebted within this state, by a judgment not justified by the laws of the community of which he is a member, if that should be found to be the case upon examination.
The statute of this commonwealth, (1795, c. 61,) also relied on for the plaintiff, has given an action of debt upon a judgment rendered and recovered in any court of record in any other of the United States, &c., to be brought in any court of record of this commonwealth, holden for the county in which either of the parties to such judgments, &c., shall dwell and reside, or in which any valuable effects of the judgment debtor shall be found at the time, &c.; the judgment to be certified in the form, and to the effect, which shall be prescribed by an act of Congress, &c. In this I see no provision, which can be construed to vary essentially the rules of the common law on this subject. The form of action is not directed exclusively; but when brought in that form, there is some degree of locality attached to it, which may not be requisite in another form of action, or in other cases. The requisite evidence is that which the federal constitution furnishes and gives effect to;, but the legal operation of that evidence is not enlarged or varied by our municipal statute.
*1 may add, upon the whole, as suggesting a consideration of some weight in determining a question of this kind, that the decision in the state of New York has been steadily adhered to there, and in subsequent decisions has been spoken of as the settled law. (7) The comity we are disposed to extend on these occasions will not be reciprocated, therefore, in all the states. Nor is it, in any view that I have had of the cases which have occurred, or which may be expected to occur, desirable or expedient that a different construction of the national law, on this subject, from that adopted in the state of New York, should finally prevail. In adhering to the common law, we should have a system of rules which will be uniformly administered, and which afford a sufficient *420 comity for every purpose of equal and exact justice, in cases where the rights of individuals are principally affected.

Per Curiam.

Let the defendant be called, (a)

Defendant defaulted.

• (1) 1 Mass. Rep 401.

 1 Caines’s N. Y. Rep. 460.

 1786, Kirby. 119.

 1788, 1 Dall. 261.

 The process, in Massachusetts, on which the judgment sued in the case of Phelps vs. Holker was rendered, and which has obtained the popular name of a foreign attachment, from its resemblance to a proceeding by the custom of London of that name, was not technically a proceeding in rem, as Chief Justice M'Kean was pleased to consider it. The declaration pursued the forms of the common law. So did the pleadings subsequent thereto. Judgment was rendered for the whole sum found due to the plaintiff in the action, and execution issued therefor, without regard to the defendant’s “ reputed property in the blanket,” (which Livingston, J., in commenting on the decision in Phelps vs. Holker, pleasantly enough mistakes for the defendant’s representative in Court, 1 Caines's Rep 473;) and the judgment so rendered, if the proceedings were conformed to the statute, had the same force and effect as a judgment founded on a process more conformed to the course of the common law. The defendant’s agent was admitted to contest the action in every legal mode, on behalf of his principal, who was always supposed to have knowledge of the suit, and might defend against it, if the agent should refuse or neglect to pursue his directions therein. The process alluded to was had under authority of a provincial act of G. 2, which, being originally temporary, was continued by succeeding legislatures until 1795, when a new and permanent act was passed, making some more convenient provisions in the case.

 2 Dall. 302.

 Doug. 1.

 See 1 Johns. Rep. 424, Jackson vs. Jackson. — 3 Caines’s Rep. 26, Post & Al vs. Neafie.

 [Vide Jacobs vs. Hull, 12 Mass. Rep. 25. — Commonwealth vs. Greene, 17 Mass. Rep. 545, 546. — Mills vs. Duryee, 7 Cranch, 481. — Hampden vs. Connell, 3 Wheat. 234. — Mayhew vs. Thatcher, 6 Wheat. 129. — Borden vs. Fitch, 15 Johns. Rep. 121. — Andrews vs. Montgomery, 19 Johns. Rep. 162. — Rogers vs. Coleman, Hard. 413.— Ed.]